UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

G&R LIVE, LLC,

                Plaintiff,                      Case No. 19-cv-11632

v.                                       Paul D. Borman
                                       United States District Judge

CHRIS JANESE,

                Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 18)

In this action, Plaintiff G&R Live, LLC ("G&R Live") alleges that its former employee, Defendant Chris Janese ("Janese"), used his position of trust and confidence to misappropriate funds and wrongfully remove G&R Live's property. As a result, G&R Live terminated Janese's employment "for cause" and now asserts claims for (1) breach of fiduciary duty, (2) fraud and misrepresentation, (3) statutory and common law conversion, (4) unjust enrichment/*quantum meruit*, and (5) breach of contract. Now before the Court is Defendant's motion to dismiss Plaintiff's conversion, unjust enrichment/*quantum meruit*, and breach of contract claims pursuant to Fed. R. Civ. P. 12(b)(6), and to dismiss the entire complaint pursuant to Rule 12(b)(1) for failing to meet the $75,000 jurisdictional requirement, or, in the alternative, an order allowing jurisdictional discovery. The matter is fully briefed

and the Court held a hearing on January 9, 2020. For the reasons that follow, the Court DENIES Defendant's Motion to Dismiss Plaintiff's First Amended Complaint without prejudice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiff's First Amended Complaint

#### 1.     Janese's Employment with Gail & Rice/G&R Live

Gail & Rice, Inc. ("Gail & Rice") is a Michigan-based corporation engaged in the business of experiential marketing. (ECF No. 17, First Amended Complaint ("FAC") ¶ 8.)[1] In 2005, Gail & Rice opened a satellite office in San Diego, California ("San Diego Office"), supported by administrative, accounting, creative and other staff located in Gail & Rice's Farmington Hills, Michigan offices. (*Id.* ¶ 9.) On January 1, 2017, Plaintiff G&R Live became successor in interest to the business conducted by Gail & Rice from the San Diego Office. (*Id.* ¶ 17.)

Defendant Janese became employed with Gail & Rice starting in 2005 as Manager of the San Diego Office. (*Id.* ¶ 10.) As Manager of the San Diego Office, and later President of G&R Live, Janese was entrusted with the authority to control

---

[1] G&R Live explains in its Response brief that "[e]xperiential marketing is an advertising strategy seeking to create a connection between a brand and its customers through sponsored events and live performances in which customers participate." (ECF No. 22, Pl.'s Resp. at 2, PgID 140.)

company funds, direct the payment of company funds for business expenses incurred for customers, and direct the actions of G&R Live employees.  (FAC ¶ 16.)

On January 1, 2007, Janese executed a Promissory Note in favor of Gail & Rice in the amount of Ninety Thousand Dollars ($90,000.00).  (*Id.* ¶ 11; Ex. 1 to FAC, Promissory Note, PgID 94-95.)  G&R Live states in its Response brief that the Note was related to attorney fees and costs which Gail & Rice advanced on behalf of Janese in connection with a lawsuit filed against him by a third party.  (Pl's Resp. at 2, PgID 140.)

On December 11, 2012, the parties entered into an Employment Agreement ("2012 Employment Agreement"), pursuant to which Janese continued to serve as Manager of the San Diego Office.  (FAC ¶ 12; Ex. 2 to FAC, 2012 Employment Agreement, PgID 97-103.)   The term of Janese's employment under the 2012 Employment Agreement was to run from April 1, 2012 to December 31, 2020.  (FAC ¶ 13; 2012 Employment Agreement ¶ 2, PgID 97.)[2]  In addition to a base salary and performance bonuses, Janese's compensation under the Agreement included the forgiveness of all principal and interest owed to Gail & Rice by Janese under the 2007 Promissory Note.  (FAC ¶ 14; 2012 Employment Agreement ¶ 4(c), PgID 98.)

---

[2] The Agreement indicated that, at the time the 2012 Employment Agreement was executed, Janese was currently employed pursuant to an "Amended and Restated Employment Agreement dated July 28, 2009 (the "Prior Employment Agreement")."  (2012 Employment Agreement, Recitals ¶ B, PgID 97.)

Specifically, the 2012 Employment Agreement provides:

(c)    Forgiveness of Note.  The Company will forgive all principal and interest owed to it by Employee under the Promissory Note dated January 1, 2007, in the principal amount of $90,000, issued by Employee to the Company (the "Note").  The Company shall deliver the Note marked "Paid in Full" to Employee *upon the execution of this Agreement*.  In addition, the Company will withhold an amount the Company reasonably determines is sufficient to cover the federal and state taxes imposed on Employee in connection with the Company's forgiveness of the amounts owing to it under the Note.

(2012 Employment Agreement ¶ 4(c) (emphasis added).)

In addition, the 2012 Employment Agreement permitted Gail & Rice/G&R Live to terminate Janese's employment for "cause," defined, in relevant part, as:

(i)   any act or omission of [Janese] which constitutes fraud, theft, dishonesty or the violation of any statutory or common law duty of loyalty to the Company;

(ii)  [Janese's] conviction of, or plea of nolo contendere to, a felony or any crime of moral turpitude; [or]

(iii)  any willful, intentional or grossly negligent act or omission by [Janese] which, in the Board's reasonable determination, materially injures the Company's business or reputation.

(FAC ¶ 15; 2012 Employment Agreement ¶ 7(c)(i)-(iii).)

### 2.    Janese's Alleged Misappropriation of G&R Live's Funds and Property

In 2019, G&R Live discovered that Janese was improperly using his position of trust and confidence to misappropriate company funds by, among other things, fraudulently charging personal expenses to customer accounts, fraudulently issuing

credits to customer accounts in exchange for the receipt of personal goods, fraudulently allocating travel costs for his personal benefit to customer accounts, and improperly forcing G&R Live's Michigan-based employees to perform personal services for him during work hours. (FAC ¶ 18.) G&R Live claims that Janese actively attempted to conceal his fraudulent conduct from oversight by G&R Live's Michigan-based owner and from its administrative, accounting and support staff, and that these wrongful activities damaged its profitability. (*Id.* ¶¶ 18-19.)

Specifically, on October 9, 2018, Janese misused his authority to direct a wire transfer in the amount of $162,500 to be paid to United Talent Agency ("UTA"), representing that the funds were for a legitimate G&R Live business expense—a cancellation fee for a performance by the rapper, "Flo Rida," related to a customer project (the "Cancellation Fee"). (*Id.* ¶ 20.) Based upon Janese's representation that the payment was for a legitimate business-related purpose, G&R Live made a wire transfer payment from its Michigan offices to UTA in the amount of $149,000 (G&R Live had previously paid UTA a deposit of $13,500). (*Id.* ¶ 21.) Upon request by G&R Live, UTA provided supporting documentation for the engagement of Flo Rida which revealed that the Cancellation Fee was only $135,000.00, and not the $162,500.00 represented by Janese. (*Id.* ¶ 22.) G&R Live discovered in February 2019 that the additional $27,500 had been misappropriated by Janese for his purely

personal expenses, specifically payment for Flo Rida's performance at the 50th birthday party for Janese's wife ("the Party").  (*Id.* ¶ 23.)

Upon confirmation of Janese's misappropriation of company funds in February 2019, G&R Live immediately commenced an investigation into further breaches of fiduciary duty, fraud, theft, embezzlement and intentional misappropriation of company funds by Janese.  (*Id.* ¶ 24.)  On April 9, 2019, G&R Live suspended Janese with pay while continuing its investigation, and Janese thereafter failed to completely cooperate with the investigation, despite requests that he do so.  (*Id.* ¶¶ 25-26.)

In the course of its investigation, G&R Live discovered additional incidents of Janese's breaches of fiduciary duty, fraud and intentional misappropriation of company funds, in addition to the $27,500 misappropriated by Janese related to the Flo Rida performance at the Party, including but not limited to:

> a.   In January, February and March 2019, Janese improperly directed G&R Live employees based in Michigan to devote over 100 hours of work and time, paid for by G&R Live, relative to the preparations for, and attendance at, the Party, at a total cost to G&R Live in excess of $5,694;
>
> b.   In March 2019, Janese improperly directed charges of $7,500 to an unrelated customer project to pay for the contractor providing sound and lighting services for the Party;
>
> c.   In March 2019, Janese improperly directed charges of $1,200 to an unrelated customer project to pay for the contractor providing temporary labor services for the Party;

d.  In February and March, 2019, Janese improperly directed charges of $1,962.93 to various unrelated customer projects to pay for air travel and car rentals associated with the work of Michigan-based and other G&R Live employees for the Party;

e.  On January 24, 2019, Janese improperly directed charges of $1,500 to an unrelated customer project for a mentalist to perform at the Party;

f.  On January 27, 2019, Janese improperly directed charges of $6,641.41 to an unrelated customer contract to pay for a private jet to attend a personal charity event;

g.  In December 2018, Janese improperly directed charges of $897.76 to an unrelated customer project for the cost of ground transportation for his brothers and one of their girlfriends – who are not employees of G&R Live – during a trip to New York City;

h.  On July 3, 2018, Janese improperly directed the issuance of a customer credit reducing the customer's invoice in the amount of $4,800 in exchange for the customer providing Janese with a Valentino purse for his wife;

i.  Since at least 2016, Janese improperly charged G&R Live for the payment of his family's landline telephone service at his home in the amount of $4,858.63;

j.  Since at least March 2018, Janese improperly charged G&R Live for the payment of his entire family's personal mobile telephone expenses; and

k.  Since at least 2012, Janese improperly removed valuable Fender and other high-quality brand guitars, paid for by G&R Live, and autographed by famous musicians, rock stars and singers, to his home for his own personal use and benefit ("Autographed Guitars").

(*Id.* ¶ 27.)  G&R Live alleges that Janese's above-referenced actions were for his sole personal benefit and wrongly caused G&R Live to earn less profit and revenue on various customer projects, negatively impacted G&R Live's ability to perform other work and unfairly placed various G&R Live employees in uncomfortable positions.  (*Id.* ¶ 28.)

On June 1, 2019, G&R Live terminated Janese's employment for cause, pursuant to Paragraph 7(c) of the 2012 Employment Agreement.  (*Id.* ¶ 29.)  Despite G&R Live's request, Janese has failed and refused to repay the misappropriated funds or return G&R Live's property.  (*Id.* ¶ 30.)

## B.    Procedural History

On June 3, 2019, G&R Live filed its original Complaint in this action, alleging six causes of action: (1) Breach of Fiduciary Duty; (2) Embezzlement/Misappropriation of Funds; (3) Fraud and Misrepresentation; (4) Common Law and Statutory Conversion; (5) Unjust Enrichment/*Quantum Meruit*; and (6) Breach of Contract.  (ECF No. 1, Pl.'s Complaint.)  Janese filed a motion to dismiss on July 29, 2019, which was stricken on August 15, 2019 for failure to comply with E.D. Mich. L.R. 7.1(a)(1).  (ECF Nos. 11, 16.)

On August 15, 2019, G&R Live filed its First Amended Complaint ("FAC"), which eliminates the claim for Embezzlement/Misappropriation of Funds but maintains the five remaining causes of action: (1) Breach of Fiduciary Duty (Count

I); (2) Fraud and Misrepresentation (Count II); (3) Common Law and Statutory Conversion (Count III); (4) Unjust Enrichment/*Quantum Meruit* (Count IV); and (5) Breach of Contract (Count V).  (FAC.)

On August 28, 2019, Janese filed his Motion to Dismiss Plaintiff's First Amended Complaint.  (ECF No. 18, Def.'s Mot.)  Janese argues that the Court should dismiss G&R Live's conversion and unjust enrichment/*quantum meruit* claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and that the breach of contract claim as it relates to damages stemming from the Promissory Note should be dismissed pursuant to Rule 12(b)(6) or stricken pursuant to Rule 12(f). (*Id.*)  Finally, Janese asks the Court to dismiss the entire FAC under Rule 12(b)(1) for failing to meet the $75,000.00 jurisdictional requirement, or, at the very least, to order jurisdictional discovery on the amount in controversy.  (*Id.*)

G&R Live filed its response to Janese's motion to dismiss on September 18, 2019.  (ECF No. 22, Pl.'s Resp.)  G&R Live argues that Janese's motion should be denied because G&R Live has stated valid claims of common law and statutory conversion, unjust enrichment and breach of contract under Rule 12(b)(6) and that none of the FAC's allegations are "redundant, immaterial, impertinent or scandalous" and thus should not be stricken pursuant to Rule 12(f). (*Id.*)  G&R Live also contends that it has satisfied the amount in controversy requirement which is

facially apparent from the FAC and that jurisdictional discovery is not appropriate. (*Id.*)

On October 2, 2019, Janese filed his reply brief, reasserting that G&R Live fails to state a claim for conversion, unjust enrichment and for breach of contract involving the Promissory Note, and that G&R Live cannot meet the amount-in-controversy requirement because G&R Live is not entitled to any amount remaining on the Promissory Note.  (ECF No. 23, Pl.'s Reply.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.*  Where the defendant brings a factual attack on the subject matter jurisdiction, "no presumptive truthfulness applies to the allegations" of the complaint and the court may consider documentary evidence in conducting its review. *Id.*  If the district court must weigh

conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist, it "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*.

**B.     Motion to Dismiss for Failure to State A Claim: Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56.

The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514

(6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)*.

## III. ANALYSIS

### A. Michigan Common Law and Statutory Conversion Claims (Count III)

In Count III of the FAC, G&R Live alleges that Janese, "[a]s Manager of the San Diego Office and, later President of G&R Live," was "entrusted to control and direct company funds" and "control the Autographed Guitars" "for legitimate, business-related purposes," but that he "exercised wrongful dominion and control" over those funds and Guitars by "converting them to his own personal use and enjoyment without G&R Live's authority, permission and/or without any lawful right to do so." (FAC ¶¶ 45-46.) And, "[t]hough he is not entitled to retain the converted funds and the Autographed Guitars, Janese has refused to return them."

13

(*Id.* ¶ 47.)  G&R Live further asserts that "Janese knew that the company funds were converted, and yet received the funds or other proceeds of the conversion, including the Autographed Guitars and other personal goods, and thereby aided in the concealment of the converted funds in violation of MCL § 600.2919a."  (*Id.* ¶ 48.)

Janese argues that G&R Live fails to state a claim for common law or statutory conversion under Michigan law.  (Pl.'s Mot. at 5-10, PgID 110-15.)  Janese contends that Michigan permits claims for conversion of funds in only narrow circumstances – if a plaintiff delivers funds to a defendant for a particular purpose but the defendant uses them for a different purpose, or if plaintiff entrusts specific funds to a defendant with an obligation that the defendant return those specific funds and the defendant fails to do so – and that G&R Live's allegations regarding the six categories of funds that Janese allegedly mishandled do not fit within those narrow circumstances because they do not "concern specific, identifiable property" and Janese exerted no "act of domain" over the property.  (*Id.* at 6, 8-10, PgID 111, 113-15.)  Janese also argues that G&R Live fails to state a claim for conversion of the Autographed Guitars because "G&R Live admits that Janese was 'authorized, and had the discretion, to control the Autographed Guitars.'" (*Id.* at 10, PgID 115.)

G&R Live responds that Janese had duties of loyalty, honesty and good faith and fair dealing which obligated him to use the G&R Live funds and property for business-related purposes only and to return such funds and property converted to

14

his personal use. Further, Janese's use of G&R Live's funds and Autographed Guitars within his control in a manner contrary to legitimate, business-related purposes, and his refusal to surrender such property on demand as alleged in the FAC, states a valid claim for common law conversion. (Pl.'s Resp. at 12-13, PgID 150-51.) G&R Live concedes only that Janese's wrongful actions set forth in Paragraph 27(a) of the FAC – that in January, February and March 2019, Janese improperly directed G&R Live employees based in Michigan to devote over 100 hours of work and time, paid for by G&R Live, relative to the preparations for, and attendance at, the Party, at a total cost to G&R Live in excess of $5,694 – should not be included as part of its conversion claim given that the hours expended by employees at the Party do not involve the requisite "personalty." (*Id.* at 14 n. 4, PgID 152.) Finally, G&R Live argues that Janese did not move to dismiss its statutory conversion claim. (*Id.* at 15-16, PgID 153-54.)

In Michigan, the tort of conversion has bases in both statutory and common law. G&R Live asserts both types of conversion here in Count III. "Under the common law [of Michigan], conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 474 (6th Cir. 2019) (quoting *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337 (2015)); *see also Keyes v. Deutsche Bank Nat'l Trust Co.*, 921 F.Supp.2d 749,

761 (E.D. Mich. 2013) ("Common law conversion 'consists of any distinct act o[f] domain exerted over another's personal property in denial of or inconsistent with the rights therein.'") (quoting *Dep't of Agric. v. Appletree Marketing, L.L.C.*, 485 Mich. 1, 13-14 (2010)). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F.Supp.3d 874, 886 (E.D. Mich. 2015), *aff'd*, 646 F. App'x 418 (6th Cir. 2016). "Additionally, a person may be liable for conversion by aiding and abetting, or merely by benefitting and subsequently approving of the act of dominion." *Yatooma v. Dabish*, Nos. 340110, 341423, 2019 WL 1302403, at *7 (Mich. App. Mar. 21, 2019) (citing *Trail Clinic, PC v. Bloch*, 114 Mich. App. 700, 705 (1982)). "[C]ommon-law conversion more broadly encompasse[s] any conduct inconsistent with the owner's property rights." *Aroma Wines*, 497 Mich. at 353.

Michigan's conversion statute prohibits both a person from "stealing or embezzling property" for his own use and knowing receipt of converted property. Specifically, the statute reads as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> > (a) Another person's stealing or embezzling property or converting property to the other person's own use.

> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

Mich. Comp. Laws § 600.2919a. In order to prevail on a claim for statutory conversion, a claimant must satisfy the elements of a common law conversion claim. *Zaremba Grp., LLC v. Federal Dep. Ins. Corp.*, No. 10-11245, 2011 WL 721308, at *12 (E.D. Mich. Feb. 23, 2011) (collecting cases). However, statutory conversion is narrower than the common law tort in Michigan, as "someone alleging conversion to the defendant's 'own use' under [M.C.L. § 600.2919a(1)(a)] must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *In re B&P Baird*, 759 F. App'x at 474 (quoting *Aroma Wines*, 497 Mich. at 358-59).

Michigan law distinguishes between claims involving the alleged conversion of money and the alleged conversion of other property (i.e., the "Autographed Guitars"). *Kerrigan v. ViSalus, Inc.*, 112 F.Supp.3d 580, 615 (E.D. Mich. 2015). "Money is treated as personal property, and an action may lie in conversion of money provided that 'there is an obligation to keep intact or deliver the specific money in

question, and where such money can be identified." *Dunn v. Bennett*, 303 Mich. App. 767, 778 (2013). A claim for the conversion of money is available only in narrow circumstances. *See Kerrigan*, 112 F.Supp.3d at 615. Specifically, "[t]o support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Keyes*, 921 F.Supp.2d at 761 (quoting *Lawsuit Fin., L.L.C. v. Curry*, 261 Mich. App. 579 (2004)). However, "it is not necessary that the money should be specifically earmarked for its return." *Citizens Ins. Co. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575 (1989). An example of specific money is "where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Hanover Exchange v. Metro Equity Group, LLC*, No. 2:08-cv-14897, 2009 WL 2143866, at *2 (E.D. Mich. July 14, 2009); *see also Citizens Ins. Co.*, 178 Mich. App. at 576 ("In this case, Delcamp Truck Center, Inc., converted Citizens' personal property when it cashed Citizens' check and retained the full amount of that check when it was entitled to only a portion of the full amount.").

In this case, G&R Live has sufficiently stated claims for common law and statutory conversion to survive a motion to dismiss. First, with regard to G&R Live's claim that Janese converted the Autographed Guitars, G&R Live alleges that "[s]ince at least 2012, Janese improperly removed valuable Fender and other high-

quality brand guitars, paid for by G&R Live, and autographed by famous musicians, rock stars and singers, to his home for his own personal use and benefit." (FAC ¶ 27(k).) G&R Live continues that Janese thus "exercised wrongful dominion and control over … the Autographed Guitars by converting them to his own personal use and enjoyment without G&R Live's authority, permission and/or without any lawful right to do so." (*Id.* ¶ 46) Janese only argues that he was "authorized, and had the discretion, to control the Autographed Guitars," and thus he did not "convert" them. (Def.'s Mot. at 10, PgID 115.) However, in making that argument, Janese conveniently ignores the remainder of G&R Live's allegation in the FAC which expressly states that Janese was "authorized, and had the discretion, to control the Autographed Guitars *strictly for legitimate, business-related purposes*, for example, as charitable contributions." (FAC ¶ 45 (emphasis added).) G&R Live has sufficiently stated both a common law and statutory claim for conversion of the Autographed Guitars and Janese's motion to dismiss these claims is denied.

And, although it is a closer call, construing the complaint "in the light most favorable" to G&R Live and "accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of" G&R Live, *Handy Clay*, 695 F.3d at 538, G&R Live has also pleaded a claim for common law and statutory conversion of company funds sufficient to survive a motion to dismiss by alleging that Janes was "entrusted to control and direct company funds strictly for legitimate, business-related

purposes" but that he "exercised wrongful dominion and control over company funds," as specifically listed in paragraphs 20 through 27 of the FAC (with the exception of the funds identified in paragraph 27(a)), "by converting them to his own personal use and enjoyment without G&R Live's authority, permission, and/or without any lawful right to do so." (FAC ¶¶ 20-27, 44-50.) *See, e.g., In re B&P Baird Holdings*, 591 F. App'x at 440 (finding that Trustee "properly alleged a claim of conversion" by alleging that defendants impermissibly appropriated corporate funds/distributions for personal use, inconsistent with his duties as a fiduciary); *Keyes*, 921 F.Supp.2d at 761 (holding that plaintiff's allegation that Bank of America converted the mortgage payments "to its own use" was sufficient "to support a claim that the plaintiffs delivered funds to Bank of America for a mortgage payment that Bank of America then diverted to its own use"); *In the Matter of: Oakland Physicians Med. Ctr., L.L.C.*, No. 15-51011, 2019 WL 1878029, at *10 (Bankr. E.D. Mich. Apr. 26, 2019) ("[T]he redirecting of payments … constitutes common law conversion."), *report and recommendation adopted by* 2019 WL 3798095 (E.D. Mich. Aug. 13, 2019), *appeal filed* (Sept. 20, 2019); *MAS, Inc. v. NoCheck, LLC*, No. 10-13147, 2012 WL 13006045, at *3-4 (E.D. Mich. Aug. 21, 2012) (plaintiff properly stated claim for conversion of money by alleging that defendant collected proceeds from automated clearinghouse payments but failed to return to plaintiff all of the money owed) (citing *Warren Tool Co. v. Stephenson*, 11 Mich. App. 274, 300

(1968) (finding conversion where the defendants "had no retained right to use such moneys in its business [and t]he plaintiffs did not agree to allow [defendant] to collect such moneys and account therefor at a later time.")).

Janese's reliance on *AFSCME International Union v. Bank One*, 267 Mich. App. 281 (2005), *Prescription Supply, Inc. v. Musa*, No. 16-12070, 2017 WL 747601 (E.D. Mich. Feb. 27, 2017) and *Live Nation Worldwide, Inc. v. Hillside Productions, Inc.*, No. 10-11395, 2011 WL 1239844 (E.D. Mich. Mar. 30, 2011) does not compel a different result, as these cases are distinguishable. In *AFSCME International Union*, the Michigan Court of Appeals affirmed, under an "abuse of discretion" standard, the trial court's denial of plaintiff's motion to amend the complaint to add common law and statutory conversion claims and to add a party. 267 Mich. App. at 295-96 & n.5. The court found that "[a]lthough plaintiffs possibly could have maintained a claim for statutory conversion against" the proposed new party, it "do[es] not believe that justice requires that plaintiff be permitted to add a late claim for statutory conversion and treble damages against" the new party. *Id.*[3] The court

---

[3] The *AFSCME* court also found, relying on the pre-2005 amended version of the conversion statute, that plaintiffs could not maintain a *statutory* conversion claim against defendants McIntyre and Estep because "statutory conversion is not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property." *Id.* at n.6. In 2005, the Legislature amended the statute to its present language and created a remedy against a person who "steal[s] or embezzle[s] property or convert[s] property to the other person's own use." Mich. Comp. Laws § 600.2919a(a)(1). *Aroma Wines*, 497 Mich. at 354. Thus, this finding in *AFSCME* is no longer applicable.

further noted, in a footnote, that "plaintiffs may not maintain an action for common-law conversion against [defendants] McIntyre and Estep" because those defendants "had no obligation to return any specific cache of money. Rather, they had an obligation to return an amount of money equal to the amount of money withdrawn from the local's bank account." *Id.* at 295 n.6. Here, G&R Live does not broadly allege, as in *AFSCME*, that Janese "withdrew funds from [G&R Live's] bank account … and deposited them into a new account in the name of [a non-party]." *See id.* at 283. Rather, as explained above, taking G&R Live's allegations as true, and drawing all reasonable inferences in favor of G&R Live, G&R Live alleges that Janese was "entrusted to control and direct company funds strictly for legitimate, business-related purposes" but that he "exercised wrongful dominion and control over company funds," as specifically listed in paragraphs 20 through 27 of the FAC, "by converting them to his own personal use and enjoyment without G&R Live's authority, permission, and/or without any lawful right to do so." (FAC ¶¶ 20-27, 44-50.)

In *Prescription Supply*, the court dismissed the conversion claim because, unlike in this case, "Plaintiffs did not plead any facts to establish that [the Defendant] had any obligation to return any of the alleged 'funds, assets, and opportunities' that Plaintiffs lost from its loss of business from customers and clients that alleged moved to Defendant" and, again contrary to this case, "[t]here are no allegations … that

Defendant … ever interacted with Plaintiffs, had any type of relationship with Plaintiffs or would have had an obligation to return any unspecified 'funds, assets and opportunities' that they gained by retaining ex-customers from Plaintiffs." *Prescription Supply*, 2017 WL 747601 at *7. And, in *Live Nation*, the court dismissed the conversion claim because, unlike this case, the plaintiff "does not specify the 'money' it claims belonged to Plaintiff and why that specific 'money' belonged to Plaintiff." *Id.* at *2-3.

Accordingly, Janese's motion to dismiss G&R Live's statutory and common law conversion claims is DENIED.

### B. Unjust Enrichment/*Quantum Meruit* Claim (Count IV)

G&R Live asserts that "Janese misappropriated and/or embezzled G&R Live's funds and the Autographed Guitars without either the express or the implied authority to do so" and "received the benefit of the improperly retained company funds and the Autographed Guitars to G&R Live's detriment." (FAC ¶¶ 52-53.) G&R Live further asserts that "Janese has neither reimbursed G&R Live nor returned the funds or the Autographed Guitars" and thus has been unjustly enriched to G&R Live's detriment. (*Id.* ¶¶ 54-56.)

Janese argues that this claim fails because it is really a "repackaged" embezzlement claim, and that Michigan law does not recognize a claim for embezzlement in these circumstances. (Def.'s Mot. at 11, PgID 116.) G&R Live

responds that Janese's argument is unsupported by the applicable facts and law, and its unjust enrichment claim is properly pled as an alternative claim to breach of contract. (Pl.'s Resp. at 16-17, PgID 154-55.) G&R Live continues that it "has properly pled that Janese received the benefit of the improperly obtained company funds and the Autographed Guitars to G&R Live's detriment, and that it would be inequitable to allow Janese to retain the benefit of the improperly obtained funds and Autographed Guitars." (*Id.* at 17, PgID 155.)

G&R Live is correct. Under Michigan law, "[u]njust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another." *Perlin v. Time Inc.*, 237 F.Supp.3d 623, 643 (E.D. Mich. 2017) (quoting *Tkachik v. Mandeville*, 487 Mich. 38, 48 (2010) (citation omitted)). A plaintiff alleging unjust enrichment must establish two elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Id.* (quoting *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003)). G&R Live has sufficiently pleaded that Janese has received a benefit (G&R Live's listed funds and the Autographed Guitars) and that it is inequitable that Janese should retain the benefit of those funds and Autographed Guitars. (FAC ¶¶ 52-58.) G&R Live correctly notes that it had initially pleaded a separate claim for embezzlement (as well as a claim for unjust enrichment/*quantum meruit*) in its original Complaint (ECF No. 1), but it did not

make that embezzlement claim in its First Amended Complaint.  Accordingly, Janese's motion to dismiss G&R Live's unjust enrichment/*quantum meruit* claim is DENIED.

### C.    Breach of Contract Claim (Count V)

G&R Live alleges that the 2012 Employment Agreement is a valid and binding contract, that it complied with all of its obligations under the 2012 Employment Agreement, and that Janese breached the 2012 Employment Agreement by  (1) his acts or omissions which constitute fraud, theft, dishonesty or the violation of any statutory or common law duty of loyalty to the Company; and (2) his willful, intentional or grossly negligent acts or omissions which materially injured the Company's business or reputation.  (FAC ¶¶ 60-62.)  G&R Live further alleges that "[d]ue to Janese's failure to complete performance under the 2012 Employment Agreement, the Ninety Thousand Dollars ($90,000) in principal and interest due under the Promissory Note is not forgiven, and is instead immediately due and owing," and, as a result of the breach, it has "suffered damages, including the loss of principal and interest due under the Promissory Note, reduced profitability as to customer accounts, the cost of its investigation of Janese's inappropriate activities, loss of goodwill, subjection to liability and other consequential and incidental damages, as well as the great expense of legal services related to this action."  (*Id.* ¶¶ 64-65.)

Janese does not seek dismissal of G&R Live's breach of contract claim in its entirety. Rather, he only argues that the Court should dismiss or strike G&R Live's assertions in paragraphs 64 and 65 of the FAC that it is entitled to principal and interest under the Promissory Note because the plain language of the 2012 Employment Agreement states that G&R Live forgave the principal and interest due on the Promissory Note upon execution of the 2012 Employment Agreement. (Def.'s Mot. at 12-14, PgID 117-19.)

In response, G&R Live argues that it has pleaded sufficient facts to survive a motion to dismiss its breach of contract claim, that Janese fails to cite to any supporting authority that dismissal of a component of contractual damages is appropriate under Rule 12(b)(6) or Rule 12(f), and that this matter is more properly addressed on a motion for summary judgment. (Pl.'s Resp. at 18-20, PgID 156-58.) G&R Live claims in its response (though not in its FAC) that it "never delivered the Promissory Note marked 'Paid in Full' to Janese." (Pl.'s Resp. at 3 n.1, PgID 141)

As explained above, the 2012 Employment Agreement provides, under "Compensation" "for [Janese's] services":

> (c)  <u>Forgiveness of Note</u>. The Company will forgive all principal and interest owed to it by Employee under the Promissory Note dated January 1, 2007, in the principal amount of $90,000, issued by Employee to the Company (the "Note"). The Company shall deliver the Note marked "Paid in Full" to Employee *upon the execution of this Agreement*. In addition, the Company will withhold an amount the Company reasonably determines is sufficient to cover the federal and

> state taxes imposed on Employee in connection with the Company's forgiveness of the amounts owing to it under the Note.

(2012 Employment Agreement ¶ 4(c) (emphasis added).)  The Agreement states that it is governed by California law.  (*Id.* ¶ 10(e).)  "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003). "Whether a contract is ambiguous is also a question of law." *Beck Park Apartments v. U.S. Dep't of Housing & Urban Dev.*, 695 F.2d 366, 369 (9th Cir. 1982).  "If the meaning a layperson would ascribe to contract language is not ambiguous," then the Court applies that meaning. *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998). A contract term is ambiguous only if "multiple reasonable interpretations exist." *Am. Fed'n of Musicians of U.S. & Can. v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) (quoting *Trs. of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008)).

G&R Live claims in its response that the Court can "infer[] … that, as a result of Janese's failure to fulfill his duties faithfully and diligently through the entire term of the 2012 Employment Agreement up to its termination date of December 31, 2020 G&R Live did not receive the bargained-for consideration in exchange for the Promissory Note."  (Pl.'s Resp. at 19, PgID 157.)  The Court questions whether that could be a "reasonable interpretation[]" of the express language of the Agreement that the Promissory Note was "forgive[n]" "*upon the execution of this Agreement*."

27

(See Pl.'s Resp. at 19, PgID 157.)  While, as Plaintiff's counsel argued at the hearing, "the 'rules of law governing the recovery of damages for breach of contract [in California] are very flexible,' and '[w]hen a contract describes a remedy for breach without an express or implied limitation making that remedy exclusive, the injured party may seek any other remedy provided by law,' this does not mean that Defendant can seek a remedy that is expressly at odds with contractual terms," *Cottage Health Sys. v. Admiral Ins. Co.*, No. CV 15-2198 PSG (AGRx), 2016 WL 7228278, at *16 (C.D. Cal. Mar. 18, 2016) (internal citations omitted), which is what G&R Live appears to seek here.

However, the question is whether the Court can dismiss pursuant to Rule 12(b)(6) or strike pursuant to Rule 12(f) only paragraphs 64 and 65 of the FAC, setting forth one component of the contractual damages Plaintiff seeks.  Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Striking a pleading is a drastic remedy and is viewed with disfavor.  *See Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015); *Black v. Boston Scientific Corp.*, No. 2:17-cv-02638-SHM, 2018 WL 3431936 (W.D. Tenn. July 16, 2018) (finding that Rule 12(f) "should be sparingly used by the courts" because "it is a drastic remedy") (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.3d 819, 822 (6th Cir. 1953)).

"The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Yannotti v. City of Ann Arbor*, No. 19-11189, 2019 WL 5540982, at *3 (E. D. Mich. Oct. 28, 2019) (quoting *Parlak v. U.S. Immigration & Customs Enf't*, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir. Apr. 27, 2006) (quoting *Brown & Williamson*, 201 F.3d at 822)).  In *Yannotti v. City of Ann Arbor*, the Court denied the defendant's motion to strike a claim for damages under Rule 12(f) because plaintiff's request for damages was "neither a defense, nor a redundant, immaterial, impertinent, or scandalous matter."  2019 WL 5540982, at *4 (citing to *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-76 (9th Cir. 2010) (holding as a matter of first impression that Rule 12(f) does not authorize a district court to strike a claim for damages because such damages are precluded by law) and *Olagues v. Timken*, 908 F.3d 200, 204 (6th Cir. 2018) (stating that Rule 12(f) "is neither an authorized nor proper way to procure the dismissal of all or part of a complaint")).  Thus, Rule 12(f) does not appear to be an appropriate vehicle for striking paragraphs 64 and 65 of the FAC, as those paragraphs are "neither a defense, nor a redundant, immaterial, impertinent, or scandalous matter."  See Fed. R. Civ. P. 12(f).

While dismissal of certain damages pursuant to Rule 12(b)(6) may be allowed in certain circumstances, *see, e.g., Wojciechowski v. Wal-Mart Assocs., Inc.*, No. 07-10991, 2007 WL 1290589, at *7 (E.D. Mich. May 1, 2007) (concluding that the

plaintiff stated a viable breach of contract claim but dismissing Plaintiff's request for mental distress damages under Rule 12(b)(6) because such damages were not available under Michigan law), the Court agrees with Plaintiff that this matter is better addressed on summary judgment. While it appears that the plain language of the parties' 2012 Employment Agreement provides that the 2007 Promissory Note was forgiven effective December 11, 2012, and thus the principal and interest due under the Promissory Note would not be a proper element of damages that may be recovered for breach of the Employment Agreement, the Court need not make that finding here on a motion to dismiss. Accordingly, Janese's motion to dismiss paragraphs 64 and 65 of the FAC is DENIED.

### D. Amount-in-controversy Requirement

Federal courts are courts of limited subject-matter jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Diversity subject matter jurisdiction is established "where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different States. 28 U.S.C. § 1332(a)(1). In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000) (noting that "[a] claim is less than the jurisdictional amount where the

'applicable state law bar[s] the type of damages sought by plaintiff.'") (citations omitted). However, "[t]he latter rule is infrequently invoked; courts have found jurisdiction in cases … where the damages claim appears inflated." *See Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 973-74 (6th Cir. 2009) (collecting cases); *see also Prieur v. Acuity*, 143 F.Supp.3d 670, n.1 (E.D. Mich. 2015) (noting that "[s]uch 'legal certainty' generally is found 'only when state law categorically bars the plaintiff from recovering the necessary amount'" and that "courts have found jurisdiction even where the damages claimed appear to be overstated").

The facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936); Fed. R. Civ. P. 8(a)(1). If these facts are challenged, the burden is on the party claiming jurisdiction to demonstrate that the court has jurisdiction over the subject matter. *Thomson v. Gaskill*, 315 U.S. 442 (1962); *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). Claims in the complaint which are subsequently dismissed enter into the amount in controversy calculation, and a single plaintiff may aggregate the value of his claims against a defendant in order to meet the amount-in-controversy requirement. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969)), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Additionally, "a court considering a dismissal for failure to meet the amount in

controversy requirement cannot … examine defenses, such as qualified immunity, res judicata, or the application of a statute of limitations." *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005).

Accordingly, the Court must consider whether the five counts alleged in G&R Live's FAC met the amount-in-controversy requirement at the time it first filed the complaint. Although G&R Live does not provide much detail about some of the damages it believes it is entitled to (i.e., "reduced profitability as to customer accounts, the cost of its investigation of Janese's inappropriate activities, loss of goodwill and other consequential and incidental damages"), it does not appear "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). G&R Live expressly lists $62,554.73 that Janese allegedly misappropriated (omitting the claim for $90,000 in principal and interest for the Promissory Note). (FAC ¶¶ 23, 27.) It is not inconceivable that the remaining damages sought in the FAC, including, but not limited to, Janese's "entire family's personal mobile telephone expenses" and "valuable Fender and other high-quality brand guitars" may total at least $12,500, and thus meet the $75,000 jurisdictional threshold. *See Ozormoor*, 354 F. App'x at 973-74 (using "the plaintiff's alleged amount unless 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed'"). In addition, G&R Live's statutory conversion claim allows for treble damages. Thus, even without

considering the other categories of damages Janese disputes in his motion (i.e., cost of investigation, legal services and attorney's fees, costs or interest, punitive and exemplary damages), it does not appear "to a legal certainty" that G&R Live cannot recover the amount claimed. Accordingly, Janese's motion to dismiss pursuant to Rule 12(b)(1) for failure to meet the amount in controversy requirement is DENIED.

### E.    Jurisdictional Discovery

As discussed above, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. *Rosen*, 205 F.3d at 920-21. Given the standard for determining whether the amount in controversy requirement is met as discussed above, and the damages specifically alleged in the FAC, jurisdictional discovery does not appear warranted. Accordingly, Janese's request for jurisdictional discovery is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and request for jurisdictional discovery (ECF No. 18) is DENIED. Defendant shall file an answer to Plaintiff's First Amended Complaint within 14 days of the date of this Order.

IT IS SO ORDERED.

Dated:  January 16, 2020                         s/Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge